UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MESSAGEONE, INC.,

    Plaintiff,

    v.

FRONTBRIDGE TECHNOLOGIES, INC. and
MESSAGERITE, INC.,

    Defendants.

CASE NO. C05-2081C

(NO. 04-CV-711 W.D. TEX.)

ORDER

    This matter comes before the Court on non-party Microsoft's motion for a protective order barring production of documents and a deponent in response to subpoenas by plaintiff MessageOne, Inc. (Dkt. No. 1). Having considered the memoranda, declarations, and exhibits filed by all parties and finding oral argument unnecessary, the Court GRANTS IN PART and DENIES IN PART Microsoft's motion for the following reasons.

**I.   BACKGROUND FACTS**

    Microsoft's motion arises from subpoenas filed by MessageOne in an underlying trade-secret-misappropriation case pending in the Western District of Texas.[1] MessageOne, plaintiff in the underlying case, alleges that defendant FrontBridge Technologies misappropriated its proprietary technology

---

[1] MessageOne, Inc. v. FrontBridge Technologies, Inc., et al., No. 04-CV-0711.

ORDER – 1

regarding e-mail continuity and disaster recovery (marketed by FrontBridge as "AMC" technology) during and after unsuccessful merger discussions in 2004 between FrontBridge and MessageOne. (Mot. Ex. 1 at 3–7.) Based on Microsoft's subsequent acquisition of FrontBridge, MessageOne served on Microsoft subpoenas generally seeking documents and a deposition regarding MessageOne's proprietary technologies, information exchanged between Microsoft and FrontBridge regarding MessageOne's technologies, and internal Microsoft projections or plans for the marketing and sale of AMC technology. (*See* Mot. Ex. 2 at 12–15.)   Following discussions between the parties, MessageOne agreed to narrow its discovery requests to four categories of documents in Microsoft's possession, custody, or control:

1. actual and projected revenues for AMC technology;
2. documents reflecting "improvements to and roadmaps for" AMC technology;
3. "technical descriptions and evaluations" of AMC technology; and
4. certain internal Microsoft e-mails containing the word "AMC."

(DiNovo Decl. Ex. 6 at 1–2.) After substantial correspondence between counsel for Microsoft and MessageOne, Microsoft produced documents that MessageOne viewed as duplicative of prior productions by FrontBridge. (*See generally* Emerson Decl. Exs. 5–10). MessageOne further seeks a deposition of a Microsoft on seven separate topics related to the four document requests above. (DiNovo Decl. Ex. 6 at 2; Mot. Ex. 2 at 4–5.) Despite sustained efforts to reach a resolution, Microsoft filed the present motion for a protective order barring production to MessageOne of the requested documents and deponent.

**II.    LEGAL ANALYSIS**

Under Civil Rules 26 and 45, Microsoft's motion presents a number of questions. As an initial matter, the Court emphasizes the broad mandate of Rule 26(b) to permit the "discovery of any matter, not privileged, that is relevant to the claim or defense of any party." FED. R. CIV. P. 26(b)(1). Rule 26(c) limits the parties' rights to discovery by enabling the district courts, on good cause shown, to enter a protective order limiting or barring discovery to protect the target from "annoyance, embarrassment,

ORDER – 2

oppression, or undue burden or expense." *Id.* 26(c). Finally, Microsoft is a non-party seeking to avoid compliance with a subpoena that "requires disclosure of a trade secret or other confidential research, development, or commercial information." *Id.* 45(c)(3)(B)(I). Accordingly, the Court is empowered to quash or modify the subpoena unless MessageOne demonstrates "a substantial need for the testimony or material that cannot be otherwise met without undue hardship." *Id.*

In sum, the Court must decide whether (1) MessageOne has demonstrated that the documents and testimony it seeks are relevant to its claims and at least reasonably calculated to lead to the discovery of admissible evidence; (2) MessageOne has demonstrated a substantial need for the documents and testimony it seeks, and that the information cannot be sought elsewhere without undue hardship; and (3) Microsoft has demonstrated its entitlement to a protective order based on the undue burden or expense of producing the documents and testimony that MessageOne seeks. The Court will address each of these three questions in turn.

   A.   *Is the Information MessageOne Seeks Relevant?*

Microsoft argues that its internal (*i.e.*, not communicated to FrontBridge) evaluations and communications regarding AMC technology and the potential profits to be made therefrom are irrelevant to MessageOne's theories of liability and damages. The Court begins its analysis of Microsoft's claims with the awareness that its "only connection with [this] case is supervision of discovery ancillary to an action in another district"; accordingly, the Court will be "especially hesitant to pass judgment on what constitutes relevant evidence thereunder," and will err on the side of permitting discovery. *Compaq Computer Corp. v. Packard Bell Elecs., Inc.*, 163 F.R.D. 329, 335 (N.D. Cal. 1995) (internal quotations omitted).

As to liability, MessageOne argues that the "unfettered access to AMC" technology that Microsoft was given during due diligence suggests that Microsoft may possess internal documentation or evaluations of FrontBridge's rights to AMC technology. The Court agrees that MessageOne may reasonably proceed on the discovery theory that Microsoft has engaged in analyses of FrontBridge's

ORDER – 3

development and ownership of AMC technology.  *See* Mark. L. Gordon, *High Technology Property and the Importance of Effective Due Diligence*, 1119 PLI/CORP 933, 955 (1999) ("By determining where, when, and by whom an intellectual property asset was created, and by tracing the exploitation, protection, and transfer of ownership of the asset from the time of its creation up through the present, the due diligence team should identify all potentially problematic points in the asset's history.").  Such information would surely be responsive to the third document request by MessageOne.  That MessageOne also sought these documents from FrontBridge, or that Microsoft's internal documents were not communicated to FrontBridge, does not render the information irrelevant.  Microsoft's non-privileged information relating to FrontBridge's development and ownership of AMC technology and possible continued misuse of misappropriated technologies is certainly relevant to MessageOne's claims in this case.

MessageOne further argues that Microsoft's internal analyses of prior actual revenues for AMC technology, as well as its projections of future revenue for Microsoft products incorporating or bundling AMC technology, are relevant to damages.  (Document Request No. 1; Opp'n 7–8.)  Microsoft concedes that "data regarding FrontBridge's actual sales may be relevant to a damages theory," but argues that its internal projections of future revenues are too speculative to establish a value for the misappropriated trade secrets and thus are irrelevant to MessageOne's damages theory.  (Reply 6.)  In doing so, Microsoft relies heavily on *Alcatel USA, Inc. v. Cisco Systems, Inc.*, in which the court granted summary judgment against the plaintiff because its damages theory rested on an excessively speculative extrapolation of the target's acquisition price as the value of the misappropriated trade secrets.  239 F. Supp. 2d 660, 668 (E.D. Tex. 2002).  However, unlike the *Alcatel* case, this is not a summary judgment motion following full discovery in a case where the parties and claims are well known to the Court.  *See id.* ("With the three and a half year development of this case, Alcatel's survival of one motion for summary judgment for lack of remedy, its submission of its report from Alcatel's damage expert, and having heard oral arguments on Alcatel's damage theory, the Court has afforded to Alcatel ample opportunity to present a

ORDER – 4

damage theory that will be legally and factually sustainable."). At this phase of the case, MessageOne should be permitted discover non-privileged information regarding Microsoft's internal projections of revenue from products incorporating or bundling AMC technology.

In a more general context, the Austin court has already ruled that "information related to Microsoft's acquisition of [FrontBridge] has potential relevance to the trade secret and tort claims asserted in the instant case, as well as to the issue of damages." (DiNovo Decl. Ex. 1 at 4.) Although MessageOne is not entitled to competitively sensitive information about Microsoft's planned improvements to or specific uses for AMC technology, the Court is unwilling to declare the bulk of MessageOne's discovery requests irrelevant from such a distant perch.[2]

   B.  *Can MessageOne Reasonably Obtain This Information Elsewhere Without Hardship?*

Microsoft's argument against MessageOne's compelling need for the discovery sought is essentially that FrontBridge has already produced all relevant information. (Mot. 9–10.) However, the Court has ruled that even information that Microsoft did not communicate to FrontBridge is relevant and discoverable. And MessageOne has demonstrated that FrontBridge is either unwilling or unable to produce documents within Microsoft's exclusive possession, custody, or control. (*See* Opp'n 9–10; DiNovo Decl. Ex. 3.) Thus, there is no reasonably available source for the information sought other than the production of responsive documents and testimony from Microsoft.

   C.  *Would Requiring Microsoft to Produce the Information Impose an Undue Burden?*

While third parties do not ordinarily have substantial discovery obligations, it would be inaccurate to characterize Microsoft as an unwitting actor dragged into litigation in which it has no stake. In fact, Microsoft pursued FrontBridge with full knowledge of MessageOne's allegations. (*See* DiNovo Decl. Ex. 9 at 7–8.) As a sophisticated and prolific acquirer of technologies and businesses, Microsoft could

---

[2] The deposition topics proposed by MessageOne in its August 9, 2005 subpoena are substantially broader than its document requests. (*See* Mot. Ex. 2 at 4–6.) As set forth in the Order below, the Court has limited those topics to those most closely tied to the four document requests.

ORDER – 5

not have realistically expected to avoid entanglements with this lawsuit once it purchased and integrated FrontBridge as a subsidiary.  Indeed, there are few risks requiring greater due diligence in the acquisition of technology companies than that of an intellectual-property dispute.  *See* Gordon, *supra*, 1119 PLI/CORP at 955.  Nor is Microsoft unfamiliar with the incidents of litigation, so it surely understood that its acquisition of FrontBridge carried the risk of responding to discovery requests, producing documents, and submitting to depositions.

Under these circumstances, the effort required to produce the requested documents and deponent is insufficient to overcome MessageOne's showing of relevance and substantial need.  In view of the limited scope of MessageOne's requests and the heightened levels of confidentiality available to Microsoft via the Protective Order, MessageOne's requests are not unduly burdensome.  (*See* DiNovo Decl. Ex. 12 at 2–3); *see also Compaq*, 163 F.R.D. at 339 (production of "commercially-sensitive" information appropriate under protective order that limited disclosure to outside counsel).

### III.   CONCLUSION AND ORDER

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Microsoft's motion for a protective order.  Microsoft is therefore ORDERED to respond to MessageOne's discovery requests as modified below:

1. Microsoft shall produce all non-privileged documents responsive to the four categories of documents requested in the letter from MessageOne's counsel dated December 1, 2005 (Emerson Decl. Ex. 10 at 2), as modified:

    a. Document Request 1 in its entirety.

    b. Document Request 2, limited to documents created by or originating from FrontBridge or MessageRite reflecting improvements to and roadmaps for AMC technology.

    c. Document Request 3 in its entirety.

ORDER – 6

    d.    Document Request 4, limited to e-mails of Microsoft employees James Hamilton and David Thompson dated January 1, 2005, to the present, to the extent such e-mails would also be responsive to the three preceding document requests as modified.

2. Microsoft shall commence production of the documents referenced above by January 10, 2006, and complete the production in full by January 17, 2006.

3. Microsoft shall designate a one or more officers, directors, managing agents, or other representative most knowledgeable about the following topics, as modified, in Exhibit 1 to MessageOne's subpoena dated August 9, 2005 (Mot. Ex. 2 at 4–6):

    a.    Topic 1 in its entirety.

    b.    Topic 4 in its entirety.

    c.    Topic 5, limited to financial plans, projections, or sales/revenue/profitability goals by Microsoft, FrontBridge, or MessageRite relating to "any E-Mail Continuity Offering."

    d.    Topic 11 in its entirety.

    e.    Topic 12 in its entirety.

4. The deposition shall occur within five court days of Microsoft's completed document production.

5. By mutual consent, the parties may agree to alter the schedules and dates set forth above.

6. Microsoft may assert all appropriate privilege objections and designate documents and deposition testimony with the appropriate level of confidentiality consistent with the provisions of the Protective Order in the underlying case. (DiNovo Decl. Ex. 12.)

7. The parties will bear their own costs and fees.

SO ORDERED this 4th day of January, 2006.

*[signature]*

UNITED STATES DISTRICT JUDGE

ORDER – 7